UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
UNITED STATES OF AMERICA                    **MEMORANDUM AND ORDER**

     - against -                      13-CR-149(KAM)

PAUL RIVERA,
MICHAEL GARRETT,
        Defendants.
-------------------------------------X
**MATSUMOTO, United States District Judge:**

     By application dated March 23, 2015, submitted "*ex parte* and under seal" and served on the government on March 22, 2015, Defendant Michael Garrett ("Mr. Garrett") requests immediate disclosure of jail logs of telephone calls, recordings of telephone calls, and electronic mail for each anticipated cooperating witness who is currently incarcerated. In the alternative, Mr. Garrett requested that the court order the government to provide current jail locations so that Mr. Garrett could serve "forthwith" subpoenas for requested communications of named individuals, or order the government to serve the subpoenas upon the institutions. The government opposes Mr. Garrett's requests. For the reasons stated below, Mr. Garrett's application is denied.

     Mr. Garrett first requested the immediate disclosure of email and telephone communications intercepted "in relation to any incarcerated cooperating witness" in his omnibus motions

*in limine* filed on January 20, 2015. (Garrett Mots. *in Limine*, ECF No. 164, at 5, filed 1/20/15.) The government responded, stating that it does not possess any such materials for its cooperating witnesses. (Gov't Mem. of Law in Resp. to Def. Michael Garrett's Pre-Trial Mots. ("Gov't Resp. to Pre-Trial Mots."), ECF No. 180, at 9, filed 2/13/15.) Thereafter, Ms. Kelley J. Sharkey, counsel for Mr. Garrett, served a February 27, 2015 Discovery Request for the information and discussed the request with AUSA Taryn Merkl on March 16, 2015, who advised that the government was not in possession of, and did not intend to obtain, the requested materials. Ms. Sharkey filed an affirmation dated March 23, 2015 seeking "immediate disclosure of jail calls and logs, and emails for all anticipated incarcerated cooperating witnesses," with proposed subpoenas as attachments. (Aff. of Kelley Sharkey ("Sharkey Aff."), ECF No. 205, filed 3/22/15.) Specifically, Mr. Garrett requested that "the court order the government to either provide current jail locations" or "serve [Mr. Garrett]'s subpoenas upon these institutions." (*Id*. at 2.)

I. **Background**

The government filed a letter dated March 24, 2015 opposing the requests made in Ms. Sharkey's affirmation, arguing that it was not required to provide the locations of the incarcerated cooperating witnesses it intends to call at trial

2

nor serve the subpoenas upon these institutions.  (Letter in Opp. to Def. Garrett's Mot. for Rule 17 Subpoena for Prison Calls ("Gov't Opp."), ECF No. 210, filed 3/25/15.)  Mr. Garrett filed a letter dated April 1, 2015 in reply to the government's opposition that also requests the court "to preclude the government from introducing any jail calls, phone records or prison emails which involve either of the defendants or any government or defense witness" if the court declines to compel the government to subpoena the requested communications and logs.  (Garrett Reply Letter, filed as "Motion to Quash Opposition" ("Garrett Reply"), ECF No. 227, filed 4/1/15.)  On April 4, 2015, the government filed a further response to Mr. Garrett's reply letter.  (Letter, filed as "Reply to Response to Motion to Quash Opposition" ("Gov't Reply"), ECF No. 231, filed 4/4/15.)

## II. Legal Standard

### A. Required Disclosures Under *Brady* and the Jencks Act

The Supreme Court has recognized that to the extent the government possesses or knows of material evidence, the government has a due process duty "to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).  The government's duty also includes the disclosure of material

3

evidence that "could be used to impeach a key government witness." *Id.* (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). The government must disclose the material exculpatory and impeachment information "in time for its effective use at trial." *Id.* at 142.

Although an individual prosecutor has "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case," such as the police, *Kyles v. Whitley,* 514 U.S. 419 (1995), the scope of the prosecutor's duty to obtain information from other agencies, such as departments of correction, is dependent on the agency's involvement with "the investigation or trial" of the defendants. *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir. 1998) (citing *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994)). The Second Circuit has made clear with regard to *Brady* that "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require . . . a monolithic view of government, that would condemn the prosecution of criminal cases to a state of paralysis." *Avellino,* 136 F.3d at 255 (internal quotations and citations omitted).

In addition to the government's *Brady* disclosures, pursuant to the Jencks Act, "the court shall, on motion of the

4

defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness as testified." 18 U.S.C. § 3500(b). No witness statement or report in the possession of the government shall be "the subject of subpoena, discovery, or inspection" until the witness has testified on direct examination at trial. 18 U.S.C. § 3500(a). The Second Circuit has held that district courts may not order the pretrial disclosure of witness statements pursuant to the terms of the Jencks Act. *See generally Coppa*, 267 F.3d at 145-146 (finding district court exceeded its authority in ordering pre-trial disclosure of Jencks material because the Jencks Act constrained the court's power to issue any such order).

### B. Discovery Pursuant to the Federal Rules of Criminal Procedure

Rule 16 of the Federal Rules of Criminal Procedure governs discovery between the parties in a criminal case. Rule 16(a)(2) expressly does not authorize "the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2).

Rule 26.2 of the Federal Rules of Criminal Procedure provides that after a witness testifies on direct examination, a party who did not call the witness may compel production of any

statement of the witness that is in the possession of the party calling the witness that "relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a).

Rule 17 of the Federal Rules of Criminal Procedure governs the procedure for subpoenas of non-party witnesses, documents and objects in criminal cases. "Rule 17 subpoenas are properly used to obtain admissible evidence, not as a substitute for discovery." *United States v. Barnes*, 560 F. App'x 36, 39-40 (2d Cir. 2014) *cert. denied*, 134 S. Ct. 2715 (2014) (citations omitted). Rule 17(h) provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." The party requesting the Rule 17 subpoena must "make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence." *Id*. (citing *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)).

### III. Application

Mr. Garrett requests that the court compel disclosure by direct order to the government or by subpoena, of telephone and email communications made by cooperating witnesses from any jail facility and the pertinent call logs, because they are likely to contain information relevant for impeachment purposes. Based on the experience of his counsel in criminal cases, Mr.

6

Garrett contends that the calls from cooperating witnesses "often discuss pressure or inducements offered by the government, personal grudges or biases against the defendant on trial, attempts to fabricate testimony, and are also powerful evidence of the real character of the witness outside the meticulously prepared facades that the jury sees at trial." (Sharkey Aff. at 1.) The government has consistently maintained that it does not possess any such communications, logs, or other requested material and has no duty to obtain such communications and logs from the Bureau of Prisons ("BOP"). (*See* Gov't Resp. to Pre-Trial Mots. at 9; Gov't Opp. at 4.) The government also argues that Mr. Garrett has failed to meet the standard articulated *United States v. Nixon* for issuing the subpoenas pursuant to Rule 17. (*See* Gov't Opp.; Gov't Reply.)

Even accepting Mr. Garrett's speculative assumptions that the BOP recordings and documents Mr. Garrett requests contain material evidence favorable to the defendant, the court cannot find that the government is in constructive possession of the materials where, as here, defendant has not presented any evidence suggesting that the BOP was involved in the investigation or prosecution of this case. *See, e.g.*, *United States v. Merlino*, 349 F.3d 144, 155 (3d Cir. 2003) (rejecting argument that government was required to obtain recorded calls from BOP under *Brady* or the Jencks Act when "the BOP was not

7

part of the prosecutorial arm of the federal government as it was not at all involved in either the investigation or the prosecution of the defendants."); *but see United States v. Ramirez,* 174 F.3d 584, 588 (5th Cir. 1999) (finding that tapes were in "possession of the United States," within meaning of Jencks Act's disclosure requirement when tape recordings were of conversations between two witnesses, one of which was a BOP employee who was part of the prosecution's investigative team.). Additionally, the government's obligation under the Jencks Act to disclose witness statements and reports by a government witness in the government's possession does not require any pretrial disclosure – the government is instead required to disclose the statements and reports after the witness has testified on direct examination. *See* 18 U.S.C. § 3500(a); Fed. R. Crim. Pr. 26.2(a).

The court also finds that Mr. Garrett's request to subpoena BOP for the recordings, emails, and logs of the anticipated cooperating witnesses fails to satisfy the standard prescribed by the Supreme Court in *Nixon*. Pursuant to *Nixon*, a subpoena proponent must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 699. Although specific evidence that may be used to impeach the cooperating witnesses and that may have bearing on the judge's assessment of the witnesses' credibility may be relevant and

admissible, the court does not find that Mr. Garrett has satisfied the specificity requirement under *Nixon*. Mr. Garrett speculates generally that "often" communications by inmates discuss "pressure or inducements offered by the government, personal grudges or biases against the defendant on trial, [and] attempts to fabricate testimony." (Sharkey Aff. at 1.) On these speculative bases alone, Mr. Garrett broadly requests all "jail calls and logs, and e-mails for all anticipated incarcerated cooperating witnesses" without any time or subject limitations, thus extending his requests beyond the bounds of relevance, admissibility and specificity. (*Id.*) Mr. Garrett's speculative requests constitute the type of "fishing expedition[s]" which are expressly prohibited under Rule 17. *See Barnes*, 560 F. App'x at 40 (finding that defendant failed to make showing of specificity when he "proffer[ed] only speculation that inmates cooperating with the government were conspiring to testify falsely against him and the subpoenaed materials would so demonstrate").

In support of his request, Mr. Garrett argues that the court should apply the standard articulated in *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), where the district court concluded that the *Nixon* standard is "inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has

9

an articulable suspicion that the documents may be material to his defense." The court ruled that, notwithstanding the *Nixon* factors prescribed by the Supreme Court, a "defendant in such a situation need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." *Id.* Applying this standard, the *Tucker* court authorized the subpoena, finding that the defendant had adequately demonstrated an articulable suspicion that the documents may be material when the government had previously provided the defendant with redacted transcripts of a cooperating witness's recorded prison calls which "indicate[d] that the cooperating witness may have been promised inducements for his testimony." *Id.* at 60. Although this court does not apply the *Tucker* standard in deciding Mr. Garrett's application[1], the court finds that even under the *Tucker* standard, Mr. Garrett's request should be denied, because it is based on speculation of his counsel, rather than an articulable suspicion. *See Barnes*, 560 F. App'x 40 n.1 (finding that defendant's "speculative showing failed to meet even the 'articulable suspicion' requirement of *Tucker*."). The other authorities to which Mr. Garrett cites all involve the

---

[1] This court agrees with the other district courts in the Second Circuit that the *Nixon* standard governs third-party subpoenas issued by the defense. *See United States v. Barnes*, No. S9 04 CR 186, 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008) ("[A]ll district courts within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense.").

government's retrieval and disclosure of **defendants'** telephone and email communications (*see* Garrett Reply. at 2), which the government has been producing on a rolling basis to Mr. Garrett and Mr. Rivera.  (*See* Gov't Resp. to Pre-Trial Mots. at 9.) Consequently, the court denies Mr. Garrett's request to order the government to provide information that it does not possess, to provide current jail locations of cooperating witnesses, or to serve the subpoenas upon the institutions in which the cooperating witnesses are incarcerated.

The court also denies Mr. Garrett's request "to preclude the government from introducing any jail calls, phone records or prison emails which involve either of the defendants or any government or defense witness" if the court declines to compel the government to subpoena the requested communications. Mr. Garrett's request for a blanket exclusion of evidence has no basis in law and is, in any event, overly broad and vague. (Garrett Reply at 3.)  Mr. Garrett's argument that the government has more tools for discovery and greater power and resources for discovery, although correct, is not dispositive, because the Second Circuit has long acknowledged that "[a] criminal prosecution, unlike a civil trial, is in no sense a symmetrical proceeding."  *United States v. Turkish*, 623 F.2d 769, 774 (2d Cir. 1980) ("The prosecution assumes substantial affirmative obligations and accepts numerous restrictions,

neither of which are imposed on the defendant. . . . The defendant, by contrast, may prevail without offering any proof at all.") To the extent that Mr. Garrett has specific evidentiary objections to certain evidence relating to the cooperating witnesses at trial, the court will consider those objections at trial.

Although the court finds that Mr. Garrett's request to subpoena the telephone and email correspondence of incarcerated cooperating witnesses is not authorized by law, the court cautions that the government does have obligations under *Brady* and *Giglio* to disclose material exculpatory and impeachment information and to disclose prior witness statements and reports in its possession under 18 U.S.C. § 3500. Although the government is not obligated to obtain information not presently in its possession, it may be improper for the government to remain willfully ignorant to key impeachment material. *Cf. Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (finding it "improper for a prosecutor's office to remain ignorant about certain aspects of a case or to compartmentalize information so that only investigating officers, and not the prosecutors themselves, would be aware of

it"). In the interests of fairness and efficiency, the court encourages the government to obtain evidence that may be relevant to the credibility and impeachment of its witnesses and disclose this information to the defendants.

SO ORDERED.

Dated: April 7, 2015
Brooklyn, New York

                                        _____/s/_____
                                        **KIYO A. MATSUMOTO**
                                        United States District Judge
                                        Eastern District of New York