UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
UNITED STATES OF AMERICA             **MEMORANDUM AND ORDER**

    - against -                 13-CR-149(KAM)

PAUL RIVERA,
MICHAEL GARRETT,
        Defendants.
-------------------------------------X
**MATSUMOTO, United States District Judge:**

        A three-count superseding indictment, filed on April 28, 2014, charges defendants Paul Rivera ("Mr. Rivera") and Michael Garrett ("Mr. Garrett") (collectively, "defendants") with racketeering (Count I), racketeering conspiracy (Count II), interstate prostitution (Count III), conspiracy to engage in sex trafficking and sex trafficking of children (Count IV), sex trafficking and sex trafficking of children (Count V), conspiracy to distribute and possess with intent to distribute heroin, cocaine base, cocaine and marijuana (Count VI), possession with intent to distribute heroin and cocaine (Count VII), conspiracy to commit murder in-aid-of racketeering (Count IX), murder in-aid-of racketeering (Count X), murder while engaged in a narcotics trafficking offense (Count XI), using, carrying and possessing a firearm (Count XIV), and causing death through use of a firearm (Count XV). (*Id.*) Mr. Garrett also is charged with money laundering (Count VIII), and Mr. Rivera is charged with witness tampering (Count XII) and attempted

1

obstruction of justice (Count XIII). (Superseding Indictment (S-3) ("Indictment"), ECF No. 94, filed 4/28/14.)

These charges arise from the defendants' alleged involvement in a group known as "Together Forever" ("TF") or "TF Mafia" that operated in the neighborhood of Brownsville in Brooklyn, New York, as well as in Scranton, Pennsylvania. (*Id.* at 2.)  The indictment alleges that defendants were both leaders of TF Mafia. (*Id.*)[1]

This Memorandum and Order addresses the following pre-trial motions before the court, which were filed by the government and the defendants as motions *in limine* pursuant to the Third Pretrial Scheduling Order.  (*See* Third Pretrial Scheduling Order, ECF No. 139, filed 10/17/14.)[2]

The government moves to (1) preclude the defendants from offering evidence of prior good conduct; and (2) introduce Mr. Rivera's proffer statements if he triggers any of the waiver provisions of the proffer agreement.  (Gov't's First Mots. *in Limine* ("Gov't Mots."), ECF No. 165, filed 1/20/15.)

Mr. Rivera, in his opposition, seeks to preclude the letters that Mr. Rivera wrote to Assistant United States

---

[1] The court assumes familiarity with defendants' charged conduct as described in its prior Memoranda and Orders. (*See* Mem. and Order dated 2/13/15, ECF No. 179; Mem. and Order dated 2/5/15, ECF No. 177.)
[2] Due to the government and Mr. Garrett's requests for extensions to file their respective responses and replies (*see* Mot. to Continue Reply to Gov't's First Mot. *in Limine*, ECF No. 176, filed 2/4/15; Letter Requesting Extension, ECF No. 184, filed 2/23/15), the motions were fully briefed on February 27, 2015.

Attorney William Houser ("AUSA Houser") prior to his proffer.[3] (Paul Rivera Mem. of Law in Opp. to Gov't's Mot. *in Limine* ("Rivera Opp.") at 4, ECF No. 183, filed 2/14/15.)

In Mr. Garrett's opening motions, he requests that the court order the government to (1) immediately disclose all statements that the government seeks to introduce as co-conspirator statements under Federal Rule of Evidence 801; (2) provide Mr. Garrett a bill of particulars and answer certain questions in relation to his money laundering charge; and (2) make certain disclosures pursuant to Rule 16. (Michael Garrett Mot. *in Limine* ("Garrett Mot."), ECF No. 164, filed 1/20/15.) Mr. Garrett also makes numerous additional requests in his opposition to the government's first motions *in limine*. (*See* Michael Garrett Resp. in Opp. re First Mot. *in Limine* ("Garrett Opp.", ECF No. 181, filed 2/13/15.) Specifically, Mr. Garrett made the following requests for disclosure: (1) "more specific notice" as to "when and where" the alleged activities relating to the interstate prostitution and sex trafficking charges occurred and identification of "the specific computer images" the government intends to introduce at trial (*id.* at 30); (2) a "detailed offer of proof" relating to Mr. Garrett's drug dealing

---

[3] Mr. Rivera does not specifically identify his two letters to AUSA Houser. However, the government's reply identifies only one letter, postmarked April 30, 2012 from Mr. Rivera to AUSA Houser. (*See* Gov't Reply Mem. in Further Supp. of Its First Mot. *in Limine* ("Gov't Reply") at 9 n.4, ECF No. 193, filed 2/27/15.)

3

in the late 1990s (*id*. at 32); (3) "a specific offer of proof" relating to a car stop of Mr. Rivera in Pennsylvania and weapons seized from Mr. Rivera's apartment (*id*. at 32-33); (4) "a written summary" of any testimony of the government's Internal Revenue Service ("IRS") witness and disclosure of what documentary evidence the government will offer in relation to the way Mr. Garrett spent money from the TF Mafia account (*id*. at 33); (5) "documentary evidence" that the government intends to introduce in relation to the murder and conspiracy to murder charges (*id*. at 33); (6) "immediate disclosure" of emails from Mr. Garrett's Gmail account. (*Id*. at 40.) Additionally, Mr. Garrett requests severance of the tampering and attempted obstruction of justice charges against Mr. Rivera, and severance from Mr. Rivera in the event that Mr. Rivera's proffer statements are introduced. (*Id*. at 34-36.)

The court will address the parties' arguments relating to the admissibility of digital media evidence and admissibility of evidence of defendants' other acts pursuant to Federal Rule of Evidence 404(b) in separate orders. At Mr. Garrett's request at a status conference on April 10, 2014, the court has postponed addressing the government's motion *in limine* to exclude the sexual behavior of alleged victims prior and subsequent to their involvement with TF.

### I. Government's Motion to Preclude Evidence of Defendants' Good Conduct

Evidence that a defendant engaged in prior good acts, when the defendant has not been charged with "ceaseless" criminal conduct is generally irrelevant and inadmissible. *See United States v. Gambino,* 838 F. Supp. 744, 748 (S.D.N.Y. 1993) ("[A] defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence."); *United States v. Nekritin*, No. 10-CR-491, 2011 WL 2462744, at *5 (E.D.N.Y. June 17, 2011) (Matsumoto, J.) ("While non-criminal activities may be relevant where the defendant is alleged to have engaged in "ceaseless" criminal conduct, '[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.'") (quoting *United States v. Scarpa,* 913 F.2d 993, 1010-11 (2d Cir. 1990)). The admission of evidence of a defendant's prior good conduct to establish his innocence is also impermissible under Federal Rule of Evidence 404(b) ("Rule 404(b)"), because such evidence "would in effect be an attempt to demonstrate appellant's good character by proof of specific good acts." *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978); *see also United States v. Al Kassar*, 660 F.3d 108, 123 (2d Cir. 2011) (upholding district court's decision to exclude evidence of prior good acts as inadmissible under Rule 404(b)). Furthermore, pursuant to Federal Rule of Evidence 403,

a district court may exclude evidence of a defendant's prior good acts if it finds that any minimal probative value of such evidence is outweighed by the likelihood of jury confusion and the risk of jury nullification. *See Al Kassar*, 660 F.3d at 124 ("And the trial judge was rightly concerned that, to the extent any of the evidence [of prior good acts] could be construed to relate to the charged conspiracies, the jury would find it extremely confusing, if not incomprehensible.").

Here, the defendants are not charged with "ceaseless" criminal activity, but rather with racketeering and racketeering conspiracy, and specific acts and a pattern of criminal conduct, including drug trafficking, sex trafficking, murder, firearms offenses money laundering as to Mr. Garrett, and witness tampering and attempted obstruction of justice by Mr. Rivera. (*See generally*, Indictment; *see also* Gov't Reply Mem. in Further Supp. of Its First Mot. *in Limine* ("Gov't Reply") at 6, ECF No. 193, filed 2/27/15.) Mr. Garrett anticipates that the government will introduce evidence of the historical background of TF, which "opens the door to the complete background" of the organization. (Garrett Opp. at 38.) Mr. Garrett also contends that he "should be permitted to cross examine" witnesses' recollections of instances of good conduct "to challenge the[ir] credibility." (*Id*.) The court finds these arguments unavailing given the requirements of Rule 404(b) and the risk of jury

6

confusion, and finds that evidence of unrelated prior good conduct, i.e., charitable giving or cooperation with law enforcement, is inadmissible. To the extent that evidence of good conduct is relevant to the charged conduct (i.e., to establish an alibi) or may be necessary to prevent misleading the jury, the court will consider its introduction at trial. The defendants are cautioned, however, that evidence of good conduct that does not refute evidence of the offense charged will not be admitted.

**II. Government's Motion to Introduce Mr. Rivera's Proffer Statements Pursuant to Its Waiver Provisions**

The government and Mr. Rivera agree that the statements made by Mr. Rivera at his August 30, 2012 proffer session may be admitted at trial against Mr. Rivera if Mr. Rivera triggers the waiver provisions of the proffer agreement.[4] The waiver expressly states that in the event Mr. Rivera testifies at trial and "offers testimony materially different" from the proffer statements or "any evidence or argument are offered" which are "inconsistent with" any proffer statements, the waiver will be triggered. (Gov't Mot. at 34 (quoting Gov't Exh. L[5]).)

---

[4] The court previously found that Mr. Rivera's statements at the proffer session were voluntary and may be admissible if the waiver provisions are triggered. (*See* Mem. and Order dated 2/5/15 at 81-105, ECF No. 177.)
[5] Government Exhibit L was admitted into evidence at an evidentiary hearing on September 8, 2014 addressing Mr. Garrett's and Mr. Rivera's motions to

7

The court will construe the waiver provision of Mr. Rivera's proffer agreement pursuant to the guidance provided by the Second Circuit. The waiver here, which is similarly worded to the waiver provision in *United States v. Barrow*, 400 F.3d 109, 118-19 (2d Cir. 2005), constitutes "an expansive waiver" reaching "any evidence, whether offered directly or elicited on cross-examination," as well as any "factual assertions," whether made "directly or implicitly." The *Barrow* court "specifically recognized that factual assertions could be implied by counsel in an opening statement or in questions posed on cross-examination." *United States v. Roberts*, 660 F.3d 149, 157–58 (2d Cir. 2011). The court is required "to consider carefully what fact, if any, has actually been implied to the jury before deciding whether proffer statements fairly rebut it." *Barrow*, 400 F.3d at 119. The Second Circuit has cautioned that "arguments or questions challenging the sufficiency of government proof, or the credibility of a witness without a factual assertion contradicting facts admitted in the proffer statement do not trigger a waiver provision." *See Roberts*, 660 at 158 (internal quotations and citation omitted).

---

suppress evidence. (Tr. of Sept. 8, 2014 Hr'g ("Tr."), ECF No. 159, at 88.) The court considers Exhibit L for the limited purpose of deciding the present pre-trial motions.

**III. Mr. Rivera's Motion to Preclude Statements in His Letters to AUSA Houser[6]**

In his February 14, 2015 opposition to the government's motions *in limine*, Mr. Rivera seeks to preclude letters he wrote "on two occasions" to AUSA Houser on the ground that suppression is required under Federal Rule of Evidence 410 ("Rule 410") as statements made to a prosecutor pursuant to plea discussions. Mr. Rivera states that these letters sought "to proffer with the government in return for a favorable disposition of his case" and that the discussions "ended without a resolution of the case by agreement with the government." (Rivera Opp. at 4.) The government opposes Mr. Rivera's request, arguing that Mr. Rivera has not demonstrated that the statements in his letter[7] to AUSA Houser should be excluded under Rule 410. (Gov't Reply at 9-18.)

Rule 410 prohibits the admission of "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Fed. R. Evid.

---

[6] The court relies on the factual findings it made in its Memorandum and Order dated February 5, 2015 to decide Mr. Rivera's motion. (*See* Mem. and Order dated 2/5/15.)
[7] As previously discussed, the government represents that it is aware of only one letter from Mr. Rivera to AUSA Houser, which was postmarked April 30, 2012, and was admitted into evidence as Exhibit G at the September 8, 2014 evidentiary hearing. (Tr. at 82.) The court considers Exhibit G for the limited purpose of deciding the present pre-trial motions. To the extent Mr. Rivera may dispute the admissibility of other letters sent by Mr. Rivera to AUSA Houser at trial, the court will make evidentiary rulings at that time, as there are no other letters currently before the court.

410(a)(4). Rule 410's limitations "are not to be read broadly," because it is an "exception to the general principle that all relevant evidence is admissible at trial." *Barrow*, 400 F.3d at 116 (internal citations and quotation omitted).

Here, the relevant issue is whether the statements made in Mr. Rivera's April 30, 2012 letter were made "during plea discussions," Fed. R. Evid. 410(a)(4), and the defendant bears the burden of establishing that his particular statements were made during plea discussions. *See United States v. Gomez*, 705 F.3d 68, 78 (2d Cir. 2013). "Whether a party [wa]s engaged in plea discussions is a factual question that must be determined on a case-by-case basis." *United States v. Serna*, 799 F.2d 842, 848 (2d Cir. 1986), *overruled on other grounds by United States v. DiNapoli*, 8 F.3d 909 (2d Cir. 1993) (en banc). In this Circuit, discussions between a defendant and the government cannot be construed as plea negotiations unless the defendant "in some way, express[es] the hope that a concession to reduce the punishment will come to pass." *United States v. Levy*, 578 F.2d 896, 901 (2d Cir. 1978). Absent a defendant's expression of his hope for reduced punishment, the defendant's self-incrimination deprives the prosecutor with any opportunity "to reject a confession he did not seek" and allows a defendant "to grant retroactively to himself what is akin to a use immunity." *Levy*, 578 F.2d at 901. The *Levy* court did not

address the question of "whether and in what circumstances, admissions by a defendant will be suppressed when they are part of a De facto process of plea bargaining even though it is less than formal." *Id*.

District courts in this Circuit have considered the following factors, *inter alia*, in determining whether discussions constitute plea discussions: (1) whether the discussions involved the terms of the plea; (2) whether the prosecutor was involved in the discussion; (3) whether defendant was counseled and the behavior of counsel; and (4) whether it is expressly stated that the discussion was in furtherance of plea negotiations. *See, e.g.*, *United States v. Stern*, 313 F. Supp. 2d 155, 167-69 (S.D.N.Y. 2003); *United States v. Galestro*, No. 06-CR-285, 2008 WL 2783360, at *21 (E.D.N.Y. July 15, 2008).

Mr. Rivera was held in custody at Susquehanna County Correctional Facility ("SCCF") after his arrest pursuant to a car stop in Pennsylvania on January 18, 2012. (Mem. and Order dated 2/5/15 at 83.) After his arrest, Mr. Rivera wrote letters to Judge Kenneth Seamans, the Pennsylvania judge assigned to Mr. Rivera's case, and Warden Nicholas Conigliaro, the Warden at SCCF, expressing his interest in cooperating with the government. (*Id.* at 86.) Mr. Garrett's letters came to the attention of AUSA Houser and Task Force Officer Daniel Mimnaugh ("TFO Mimnaugh"), who met with Mr. Rivera in April 2012. (*Id.*

11

at 87.)  At this meeting, when asked if he would like to cooperate with law enforcement, Mr. Rivera stated that he wanted an attorney, at which time TFO Mimnaugh and AUSA Houser stopped speaking with Mr. Rivera.  (*Id.* at 87.)  After this meeting, Mr. Rivera sent AUSA Houser the letter in question postmarked April 30, 2012, stating he wants "to do the right thing" and that he feels "with this opportunity [he]'ll be at a point of no return."  (*Id.;* Gov. Exh. G.)  Thereafter, a formal proffer session occurred on May 30, 2012 where Mr. Rivera was represented by his appointed attorney, Middle District of Pennsylvania Federal Defender Ingrid Cronin.  (Mem. and Order dated 2/5/15 at 88.)

The statements contained in Mr. Rivera's April 30, 2012 letter do not express any hope for a reduced sentence, or mention the terms of a plea agreement, and was sent unsolicited by Mr. Rivera without the aid of his counsel.  There is no evidence that Mr. Rivera was expressly notified by, or that Mr. Rivera notified, AUSA Houser or TFO Mimnaugh that plea negotiations had begun.  If anything, that AUSA Houser and TFO Mimnaugh stopped their meeting with Mr. Rivera as soon as he requested counsel, and resumed their in-person discussions after Mr. Rivera was represented by counsel suggests that the plea negotiations began at the May 30, 2012 meeting during which Mr. Rivera gave his proffered statements while represented by

12

counsel.  *Cf. Stern*, 313 F. Supp. 2d at 168 ("Such a proffer interview involving the prosecutor, defendant and defense counsel is the conventional first step in attempting to negotiate the terms of a plea/cooperation agreement.")  Mr. River has failed to establish that the statements he made in his letter postmarked April 30, 2012 to AUSA Houser constitute "plea negotiations" under Rule 410.  Consequently, Mr. Rivera's request to preclude his April 30, 2012 letter is denied.

The court reserves the issue of whether Mr. Rivera's letters are admissible against Mr. Garrett.  In light of the reference to Mr. Garrett in Mr. Rivera's April 30, 2012 letter, the court reminds the government that it must substitute neutral terms or perform redactions in accordance with *Bruton v. United States*, 391 U.S. 123, 136 (1968).  *See United States v. Jass*, 569 F.3d 47, 56 n.5 (2d Cir. 2009).

**IV. Mr. Garrett's Disclosure Requests**

Mr. Garrett's requests for disclosure in his opening motions *in limine* and in his opposition are again denied.  Mr. Garrett has again made numerous requests for the government to identify specifically what evidence it intends to introduce at trial to prove its case.  The court construes these requests as requests for bills of particulars with respect to certain charges.  For example, with respect to the charges of interstate prostitution, sex trafficking, and sex trafficking of children,

13

Mr. Garrett "requests the Court to direct the government to provide more specific notice, when and where these alleged activities took place so that Garrett can defend against these charges." (Garrett Opp. at 30.)

As the court previously discussed in its Memorandum and Order dated February 5, 2015, which denied Mr. Garrett's request for a bill of particulars in relation to the money laundering charge, a defendant's request for a bill of particulars may be denied "if the information sought by defendant is provided in the indictment or in some acceptable alternate form," such as discovery. *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987) "[O]nly where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused" is a bill of particulars warranted. *United States v. Perryman,* 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012) (quoting *United States v. Torres,* 901 F.2d 205, 234 (2d Cir. 1990), *overruled on other grounds as recognized by United States v. Marcus,* 628 F.3d 36 (2d Cir. 2010)). Mr. Garrett is not entitled to a bill of particulars under law, especially when the government has provided extensive discovery, extensively outlined its theories and supporting evidence in its motions *in limine*, and has provided its preliminary exhibit list.

Mr. Garrett also makes discovery requests pursuant to Federal Rule of Criminal Procedure 16; specifically he requests disclosure of (1) Mr. Garrett's emails and phone calls intercepted at MDC and MCC; (2) intercepted emails and phone calls for incarcerated cooperating witnesses; (3) the results of the privilege review for the tfmafia@gmail.com email account in .pdf form; and (4) 18 U.S.C. § 3500 materials relating to alleged victims' sexual behavior or predisposition. The court denied Mr. Garrett's requests for an order directing the government, or an order granting his requests for subpoenas, seeking the email and telephone communications of cooperating witnesses in its Memorandum and Order dated April 7, 2015, ECF No. 238. With respect to Mr. Garrett's other Rule 16 requests, the government has represented that it has already produced or is in the process of producing, the defendants' MDC and MCC emails and phone calls, the privilege review of tfmafia@gmail.com account, and the alleged victim witnesses' 3500 materials. (*See, e.g.*, Letter re Production of Victim 3500 Materials, ECF No. 208, filed 3/25/15; Gov't's Mem of Law in Resp. to Def. Michael Garrett's Pre-Trial Mots. at 9-11, ECF No. 180, filed 2/13/15.) Consequently, the court denies them as moot.

**V. Mr. Garrett's Motions for Severance**

Mr. Garrett again moves to sever his trial from his co-defendant, Mr. Rivera, in the event the court allows the admission of Mr. Rivera's proffer statements.  The court's February 5, 2015 Memorandum and Order addressed Mr. Garrett's concerns that a joint trial would violate Mr. Garrett's confrontation rights as set forth in *Bruton v. United States*, 391 U.S. 123 (1968).  Mr. Garrett presents no new arguments or facts and fails to demonstrate that the court's February 5, 2015 Memorandum and Order has "overlooked controlling law or material facts" that would justify reconsideration of the court's previous decision denying severance in the event Mr. Rivera's statements are admitted at trial.  *See United States v. Delvi*, No. S1201-CR-74, 2004 WL 235211 (S.D.N.Y. Feb. 6, 2004).  In an

Mr. Garrett further moves, for the first in his opposition to the government's motions *in limine*, to sever the charges in the Indictment against Mr. Rivera where Mr. Garrett is not named in the charge — specifically, witness tampering (Counts I (predicate act VII), II (predicate act VII), and XII), and attempted obstruction of justice (Counts I (predicate act VII), II (predicate act VII), and XIII).  (Garrett Opp. at 35.) Mr. Garrett contends that the introduction of evidence relating to the charges against Mr. Rivera for obstruction of justice and witness tampering would be unduly prejudicial, because "the introduction of this evidence will inevitably cast suspicion on

16

any witness effectively challenged through cross-examination by Garrett's counsel or proffered on the direct case of Michael Garrett" and "will lead a juror to suspect that the trial process is potentially corrupted." (*Id.* at 36.) The only authority to which Mr. Garrett cites is *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998), in which the Second Circuit upheld the district court's denial of defendant's motion to sever his trial from his co-defendants.

Federal Rule of Criminal Procedure 8 provides, in relevant part:

> (a) JOINDER OF OFFENSES. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
> (b) JOINDER OF DEFENDANTS. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Pursuant to Federal Rule of Criminal Procedure 14, "[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

A defendant seeking severance of properly joined counts "carries a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato,* 15 F.3d 230, 237 (2d Cir. 1994). The general rule favoring joint trials is particularly applicable in conspiracy and RICO cases, where proof of many elements of the charges against all the defendants is based upon the same evidence and acts. *See e.g.*, *United States v. Moten,* 564 F.2d 620, 626–28 (2d Cir. 1977), *cert. denied,* 434 U.S. 942 (1977). Here, the charges of obstruction of justice and witness tampering against Mr. Rivera are properly joined, because the alleged acts are also RICO predicate acts and are "connected with or constitute parts of a common scheme or plan," specifically the RICO and RICO conspiracy charges. Fed. R. Crim. P. 14(a). As charged predicate acts of racketeering, the charges of obstruction of justice and witness tampering are admissible to prove "(i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities." *United States v. Basciano*, 599 F.3d 184, 206 (2d Cir. 2010) (quoting *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992). Further, as alleged in the indictment, the defendants and members of or associates of the TF Mafia enterprise engaged in conduct "designed to prevent government

detection of their identities, their illegal activities and the location of the proceeds of those activities," through money laundering, witness tampering and attempted witness tampering, targeting individuals suspected of being potential witnesses against members and associates of the TF Mafia enterprise. (Indictment ¶ 6(d).) In light of the presumption in favor of joint trials and the fact that the obstruction of justice and witness tampering charges are both predicate acts for the overarching racketeering charges, the court finds Mr. Garrett's arguments of prejudice are insufficient to justify severance of the counts. *See United States v. Rastelli*, 870 F.2d 822, 836 (2d Cir. 1989) (upholding district court's refusal to sever the perjury and obstruction of justice counts in RICO case).

**SO ORDERED.**

Dated:    April 15, 2015
             Brooklyn, New York

                                        _____/s/_____
                                        **KIYO A. MATSUMOTO**
                                        United States District Judge
                                        Eastern District of New York