UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA               **MEMORANDUM AND ORDER**

        - against -                    13-CR-149(KAM)

PAUL RIVERA,
MICHAEL GARRETT,
              Defendants.
------------------------------------X
**MATSUMOTO, United States District Judge:**

        This Memorandum and Order addresses the admissibility

of excerpts of video evidence identified by the Government's

First Motions *in Limine* ("Gov't Mots."). (ECF No. 165, filed

1/20/15.) A three-count superseding indictment, filed on April

28, 2014, charges defendants Paul Rivera ("Mr. Rivera") and

Michael Garrett ("Mr. Garrett") (collectively, "defendants")

with racketeering (Count I), racketeering conspiracy (Count II),

interstate prostitution (Count III), conspiracy to engage in sex

trafficking and sex trafficking of children (Count IV), sex

trafficking and sex trafficking of children (Count V),

conspiracy to distribute and possess with intent to distribute

heroin, cocaine base, cocaine and marijuana (Count VI),

possession with intent to distribute heroin and cocaine (Count

VII), conspiracy to commit murder in-aid-of racketeering (Count

IX), murder in-aid-of racketeering (Count X), murder while

engaged in a narcotics trafficking offense (Count XI), using,

carrying and possessing a firearm (Count XIV), and causing death

1

through use of a firearm (Count XV). (*Id.*) Mr. Garrett also is charged with money laundering (Count VIII and Racketeering Act 5 in Counts I and II), and Mr. Rivera is charged with witness tampering (Count XII and Racketeering Act 7 in Counts I and II) and attempted obstruction of justice (Count XIII and Racketeering Act 7 in Counts I and II). (Superseding Indictment (S-3) ("Indictment"), ECF No. 94, filed 4/28/14.)

These charges arise from the defendants' alleged involvement in a group known as "Together Forever" ("TF") or "TF Mafia" that operated in the neighborhood of Brownsville in Brooklyn, New York as well as in Scranton, Pennsylvania. (*Id.* at 2.) The indictment alleges that defendants were both leaders of TF Mafia. (*Id.*)[1]

## BACKGROUND

### I. The Government's Motion to Admit Digital Media Evidence

This Memorandum and Order addresses the parties' motions *in limine* that relate to the digital media evidence[2] that the government intends to introduce at trial. The government moves to admit a set of twenty videos posted by Mr. Garrett to

---

[1] The court assumes familiarity with defendants' charged conduct as described in its prior Memoranda and Orders. (*See* Mem. and Order dated 2/13/15, ECF No. 179; Mem. and Order dated 2/5/15, ECF No. 177.)

[2] The government indicates that, in addition to video evidence, it also intends to introduce "various text messages, draft text messages, emails and draft emails." (Gov't's First Mots. *in Limine* ("Gov't Mots.") at 36, ECF No. 165, filed 1/20/15.) Because the court has only the video evidence before it, the court declines to make any evidentiary rulings regarding the other digital media evidence that the government intends to introduce.

YouTube ("YouTube videos"), each lasting approximately a few minutes, and excerpts from a lengthier film about TF ("TF Video") (collectively, the YouTube videos and TF Video are referred to as "video evidence").[3]  (Gov't Mots. at 36-39; Gov't Reply at 26-48.)  The government seeks to admit this video evidence as direct evidence of defendants' charged conduct. (Gov't Mots. at 37.)  To the extent the video evidence contains statements of defendants or their co-conspirators, the government will seek admission of the evidence as admissions of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A), or as statements made during and in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E), or other evidentiary bases.  The government represents that it may introduce evidence that:

> demonstrates the existence of the TF Mafia criminal enterprise; TF Mafia's involvement in racketeering activity and its impact on commerce; the defendants' history with the enterprise; the development of relationships of trust between the defendants and their coconspirators, including cooperating witnesses; the defendants' unlawful possession and use of firearms (evidencing a

---

[3] The government refers to the TF Video as "the TF Documentary" in its motion papers, to which Mr. Garrett objects. (Michael Garrett Resp. in Opp. re First Mot. *in Limine* ("Garrett Opp.") at 39, ECF No. 181, filed 2/13/15)  Mr. Garrett contends that the term documentary is a mischaracterization of the video and proposes substituting the term "docudrama." (*Id.*)  The government has indicated in its Reply that "it is amenable to" using a different term at trial.  (Gov't Reply Mem. in Further Supp. of Its First Mot. *in Limine* ("Gov't Reply") at 26 n.6, ECF No. 193, filed 2/27/15.)  For the purposes of this motion, the court refers to the documentary/docudrama in question as "the TF Video" as distinguished by the videos that Mr. Garrett posted to YouTube, which it will refer to collectively as "YouTube videos."

> history of violence); and specific crimes
> committed by the defendants to further the goals
> of the enterprise and to maintain their positions
> as leaders.

(*Id.* at 38-39.)

Mr. Garrett opposes the government's motion to admit the video evidence and seeks to preclude all of the government's proffered video evidence on the grounds that (1) admission of the video evidence will violate defendants' First Amendment rights; (2) the video evidence is irrelevant; and (3) the prejudice of admitting the videos would outweigh their probative value. (*See* Garrett Opp.) Mr. Rivera joins in Mr. Garrett's arguments against admission of the video evidence. (Rivera Opp. at 5.)

## II.  The Video Evidence

In connection with the defendants' activities with TF and TF Mafia, they have produced music that defendants characterize as belonging to the "gangsta rap" genre, as well as videos related to their music production. (*See* Garrett Opp. at 3-5.) Defendants posit that Together Forever, TF Mafia, and TF Mafia Muzik LLC are distinct organizations "that have some overlap of personnel," and that TF Mafia, and later TF Mafia Muzik LLC, "were formed to promote Rap music, Rap artists, and live Rap musical performances." (*Id.* at 3.) Defendants contend

that these videos were produced "for entertainment purposes."
(*Id.*)

In its reply to the defendants' oppositions, the
government designates the YouTube videos into four categories:
(1) slideshows of photographs set to music; (2) video recordings
of events and conversations; (3) video compilations; and (4) rap
music videos and outtakes. (Gov't Reply at 29.) For the
purposes of providing relevant background for the instant
motion, the court describes generally the TF Video and the
YouTube videos that the government seeks to introduce.

A. The TF Video

The government has identified eleven excerpts from the
TF Video that it "may seek to introduce in whole or in part."
The total time of these TF Video excerpts is approximately 50
minutes of the entire length of the video, which is one hour and
58 minutes long. (Gov't Mots. at 35; Gov't Mot. Ex. B.) Mr.
Garrett asserts that the TF Video is a docudrama, a
"fictionalized dramatic piece comprised of differing scenes."
(Garrett Mot. at 39.) The TF Video is a compilation of
interviews of the defendants and their associates, footage from
what appears to be various TF events and meetings, and footage
from rap videos. The TF Video shows, *inter alia*, footage
regarding the January 18, 2012 car stop of the vehicle driven by
Mr. Rivera (*see* Gov't Mots. Ex. B at 1:07:28), Mr. Garrett with

large quantities of paper currency (*see id.* at 9:30), and at times the defendants are shown with firearms (*see id.* at 18:00-19:15) and smoking what appears to be a marijuana cigarette (*see id.* at 1:02:21). Throughout the TF Video, rap music tracks and computer-generated images of the TF logos are used to transitions between shots. At times while the camera seems to be capturing casual conversations between the subjects on camera, the subjects will start performing rap to the camera and the audience (commonly described as "breaking the fourth wall"), while a music track is played in the background. (*See* Gov't Mots. Ex. B. at 17:00.)

B. YouTube Videos

1. Slideshows of Photographs Set to Music

The government seeks to introduce two YouTube videos which consist of compilations of photographs and the TF logo set to music. The photos depict the defendants and other individuals with tattoos depicting, or wearing clothing and accessories printed with TF or TF Mafia logos.

2. Video Recordings of Events and Conversations

The government seeks to introduce five YouTube videos, which appear to document conversations and interviews featuring the defendants. In certain videos, the cameraman is in conversation with the subject(s) on camera. (*See, e.g.,* Gov't Mots. Ex. D – "Russian Eddie from T.F. Together Forever –

pluggin the BOSSILINI album," in which Garrett appears to be holding the camera and speaking with an individual identified as Eddie.)  The videos are shot in residences and in vehicles.  It is apparent that certain videos were shot in Brooklyn, NY.  (*See* Gov't Ex. D – "The Body – Real Live Murder Scene" (showing the street signs at the intersection of Loring and Emerald streets in Brooklyn, NY).)

### 3.  Video Compilations

The government seeks to introduce three YouTube videos that it categorizes as "video compilations."  These compilations are comprised of clips of rap videos, computer-generated logos, computer-generated text (i.e. showing the year), footage documenting various events, and interviews with subjects about the history and purpose of TF.  Although the government characterizes the video entitled "Brooklyn Zoo-Boo" as a video compilation, the court agrees with Mr. Garrett that this video is more properly categorized as a rap music video.

### 4.  Rap Music Videos and Outtakes

The remaining nine videos that the government seeks to introduce consist of eight videos depicting Mr. Garrett and other individuals that the government alleges to be members of TF Mafia performing rap music, and one video (Gov't Mots. Ex. D – "Untitled") that is an outtake from a music video shoot depicting several individuals in front of a green screen as they

7

are given instructions by a director.  In many of the videos,
Mr. Garrett and the other individuals (some of whom the
government states are cooperating witnesses) are depicted
wearing clothing and accessories with the TF logos.  The videos
also depict scantily-clad women dancing, expensive cars, and the
performers, at times, perform rap about involvement in criminal
activity such as drug dealing.

**APPLICATION**

## I. First Amendment

Mr. Garrett contends that the videos that the
government seeks to introduce constitute "expressive conduct and
artistic expression" that are "entitled to heightened
protection" under the First Amendment and that their admission
would violate his right to free expression.  (Garrett Opp. at
15.)  Mr. Garrett states that the videos comment on
"contemporary hot button issues of economic inequality, racial
inequality, authority abuse and aspects of urban life" which
constitute matters of "public concern" under *Snyder v. Phelps*,
562 U.S. 443 (2011).  Mr. Garrett contends that because the
proffered videos constitute protected speech "a constitutional
analysis of [the speech] is required even when an evidentiary
analysis is also available."  (Garrett Opp. at 17.)  The
government argues that the First Amendment does not erect a

constitutional bar to the admission of the video evidence in
this case.

Mr. Garrett's reliance on *Snyder v. Phelps* is
unavailing.  In *Snyder v. Phelps*, the Supreme Court found that
imposition of civil tort liability for the expression of speech
itself (wherein the speech was the picketing of a soldier's
funeral) violated the First Amendment.  The *Snyder* decision,
however, did not address how the First Amendment may govern the
admission of evidence that constitutes speech in criminal cases.

Here, the issue before the court is not the
prosecution or regulation of the speech itself.  *See United
States v. Caronia*, 703 F.3d 149, 162-63 (2d Cir. 2012) ("The
First Amendment protects against government regulation and
suppression of speech on account of its content.")  Rather, the
issue is whether evidence that constitutes speech protected
under the First Amendment may be admitted as evidence of
criminal conduct in a criminal trial.  The Supreme Court has
recognized that "[t]he First Amendment . . . does not prohibit
the evidentiary use of speech to establish the elements of a
crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508
U.S. 476, 489 (1993); *see also Dawson v. Delaware*, 503 U.S. 159
(1992) ("[T]he Constitution does not erect a per se barrier to
the admission of evidence concerning one's beliefs and
associations . . . .").  The First Amendment, however, does bar

9

the admission of evidence relating to a defendant's "abstract beliefs . . . when those beliefs have no bearing on the issue being tried." *Dawson*, 503 U.S. at 168. "The crucial question is whether the evidence at issue was used for permissible purposes or merely to show that [the defendant] was morally reprehensible due to his abstract beliefs." *United States v. Fell*, 531 F.3d 197, 229 (2d Cir. 2008) (internal quotations omitted) (quoting *United States v. Kane*, 452 F.3d 140 (2d Cir. 2006)).

The government seeks to offer the video evidence as direct evidence for the purposes of proving the existence of the racketeering enterprise, the defendants' history with the TF Mafia enterprise and its members and associates, relationships of trust between its members, the defendants' involvement in racketeering activity and its impact on commerce, the defendants' unlawful possession and use of firearms, and specific crimes committed by the defendants to further the goals of the enterprise and to maintain their positions as leaders. (Gov't Mots. at 38-39.) The government contends that the defendants and the members and associates of TF Mafia created and maintained a criminal enterprise engaged in narcotics trafficking, sex trafficking, money laundering, murder, obstruction of justice and the use of weapons in furtherance of crimes of violence in and between Brooklyn, New York and

Scranton, Pennsylvania.  (*See generally*, Indictment.)  The government intends to prove that the proceeds of the enterprise were used to finance the production of videos which record their "real-life criminal conduct" to further the goals of the enterprise.  (Gov't Reply at 46-47.)

The court finds, based on the government's showing, that the proffered video evidence bears on the proof of defendants' charged conduct. The court further finds that the video evidence is not being offered by the government to depict the defendants as "morally reprehensible" because of their "abstract beliefs" as expressed through the content of their videos.  *Fell*, 531 F.3d at 229. Consequently, the First Amendment does not present a *per se* bar the introduction of rap video evidence in this case. *See United States v. Salameh*, 152 F.3d 88, 111-12 (2d Cir. 1998) (rejecting arguments that the First Amendment bars admission of evidence of a defendant's political speech when the materials were used to prove motive and intent and "provided circumstantial proof of a connection among the conspirators"); *United States v. Herron*, No. 10-CR-615, 2014 WL 1871909, *2-*3 (E.D.N.Y. May 8, 2014) (rejecting defendant's argument on First Amendment grounds for preclusion of rap-related videos).

## II. Federal Rules of Evidence

Mr. Garrett argues that the proffered videos are not relevant pursuant to Federal Rule of Evidence 401 ("Rule 401"); that the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence outweighs the probative value of the video evidence pursuant to Federal Rule of Evidence 403 ("Rule 403"); and that the videos are inadmissible character evidence pursuant to Federal Rule of Evidence 404 ("Rule 404").[4] (Garrett Mot. at 12-13.)

Although the defendants' objections to the admissibility of the video evidence focus primarily on the rap performances by defendants and others, the government asserts that much of the video evidence depicts conversations between defendants, coconspirators and other witnesses, records events that are direct evidence of or provide important context for the charged crimes, or discuss the history and purpose of the TF Mafia enterprise and the relationships between members and associates of the enterprise. (Gov't Reply at 28-29.) With respect to the YouTube videos in which the defendants and other individuals perform rap, the government also contends that they constitute enterprise evidence by proving that the TF members

---

[4] The court will address the introduction of evidence of "crime[s], wrong[s], or other act[s]" pursuant to Rule 404 in a separate Memorandum and Order.

are associated in fact, provide context for the history and relationship of trust between the defendants and their co-conspirators, and are themselves direct evidence of the charged money laundering counts. (*Id.*) Furthermore, according to the government, many of the videos contain statements of the defendants or their co-conspirators which are admissible as admissions of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A), or admissible as statements made during and in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E). (Gov't Mots. at 37 n.13.)

Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "The Supreme Court, considering Rule 403, has explained the term 'unfair prejudice, as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged,' or in other words, 'an undue tendency to suggest decision on an

improper basis.'" *United States v. Awadallah*, 436 F.3d 125, 133
(2d Cir. 2006) (quoting *Old Chief v. United States*, 519 U.S.
172, 180 (1997)). Given that defendants are charged with
racketeering and racketeering conspiracy, the court finds that
the proffered videos are generally relevant to proving the
existence of the enterprise and the relationships between its
members. *See Herron*, 2014 WL 1871909, at *4 (finding the
content of the rap-related videos to be generally relevant in a
case where the government must prove the existence and structure
of an alleged criminal enterprise).

The court, however, has considered the defendants'
contention that the fictionalized and dramatized nature of some
of the videos, where individuals may be boasting about the
excesses of a certain lifestyle that may glamorize criminal
conduct, should be excluded because it is "overly prejudicial"
and is likely to confuse the jury. (Garrett Opp. at 5.)
Therefore, without a proffer by the government of what portions
of the video evidence will be offered, the context of and
individuals depicted in the video, and its relationship to the
defendants and the charged conduct, the court reserves decision
as to admissibility as to some of the video evidence.
Furthermore, given the sheer volume of video evidence that the
government seeks to admit, the court may well determine that

some of the proffered evidence is cumulative and limit its admission at trial.[5]

Nonetheless, the court will specify in this Memorandum and Order the video evidence that it finds to be admissible based on the record presently before it.  With respect to the remainder of the video evidence, the court reserves ruling on its admissibility.

A. The TF Video

The court finds excerpts 8 to 11 of the TF Video to be highly probative; these excerpts show the events surrounding Mr. Rivera's January 18, 2012 car stop, including footage of Mr. Rivera's car driving on the highway, Mr. Garrett's discussions with an attorney Frederick J. Meagher about the arrest of the occupants of Mr. Rivera's vehicle, and scenes of Erina Henry, identified as Mr. Garrett's girlfriend, traveling to Susquehanna County Correctional Facility to visit the individuals arrested, and then reporting to Mr. Garrett about whether the arrested individuals were speaking to law enforcement.  In light of the quantities of narcotics recovered from Mr. Rivera's vehicle pursuant to the January 18, 2012 car stop and search, these video excerpts are, at the very least, direct evidence of the

_____

[5] The court recognizes that generally "when the trial has not yet commenced and no evidence has yet been put before a jury, it is premature to conclude that this evidence is cumulative," but forecasts that the court will find that duplicative evidence will likely be deemed to be cumulative.  *United States v. Jamil*, 707 F.2d 638, 643 (2d Cir. 1983).

substantive conspiracy charges to distribute and possess with

intent to distribute heroin, cocaine base, cocaine and marijuana

(Counts I (predicate act II), II (predicate act II), and VI).

Additionally, the excerpts of the TF Video related to the

January 18, 2012 car stop are not stylized in a way that appears

to be for promotional or entertainment purposes; rather, the

excerpts appear to record events as they are happening, and the

risk of unfair prejudice is minimal.  Consequently, the court

finds that the probative value of the excerpts of the TF Video

relating to the January 18, 2012 car stop and search (excerpts 8

to 11) substantially outweighs the danger of unfair prejudice

under Rule 403 and excerpts 8 to 11 are therefore admissible.

The court, however, reserves its ruling with respect

to the remainder of the excerpts 1 to 7 of the TF Video.  The

court encourages the government to limit the excerpts of the TF

Video that it seeks to introduce to portions where the onscreen

subjects are conversing or speaking as opposed to performing

rap.  As the court has previously discussed, the great volume of

video evidence that the government may introduce at trial is

likely to be cumulative and waste the time of the jury.

Consequently, the court may exclude certain excerpts of the TF

Video or limit the length of certain excerpts even if the

footage is relevant to the charged conduct if the court finds

that the probative value of the footage is outweighed by the

danger of wasting the jury's time or needlessly presenting
cumulative evidence under Rule 403.  For example, the court
finds that the portion of the first excerpt of the TF Video that
the government seeks to introduce, where Mr. Garrett tells the
camera that the DVD is about how "n*****s are supposed to do it"
is only minimally probative and should be excluded at trial.

    B. <u>YouTube Videos</u>

       The court finds the video titled "The RATS who lied on
Paulee Zance.  The Founder of Together Forever" is highly
relevant evidence of the charged offense and its probative value
far outweighs the minimal risk of prejudice that the video may
present.  The video depicts Mr. Garrett discussing Mr. Rivera's
January 18, 2012 car stop with two anticipated trial witnesses
and, therefore, is direct evidence of the conspiracy to
distribute and possess with intent to distribute heroin, cocaine
base, cocaine and marijuana (Counts I (predicate act II), II
(predicate act II), and VI).  The video is also direct evidence
of the means of control that Mr. Garrett employed to maintain
the enterprise.  Unlike many of the other videos that the
government seeks to introduce, the subjects in the video do not
perform rap and the video contains no computer-generated images
or text.  Based on the court's review of the video, it does not
appear to have been produced for entertainment or promotional
purposes, and therefore, will neither run afoul of the First

Amendment nor unfairly prejudice or mislead the jury under Rule 403. Furthermore, the statements made on the video are admissible as admissions of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A) or as statements made during and in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E). Consequently, the court finds that the video titled "The RATS who lied on Paulee Zance. The Founder of Together Forever" is admissible in its entirety.

With respect to the remainder of the videos, the court declines wholesale admission at this time without a more specific identification of the portions of the videos the government seeks to admit, the context and identification of the individuals depicted, and the bases for admission. The videos appear to be of minimal probative value. For example, the video titled "The Body – Real Live Murder Scene" depicts Mr. Garrett and others driving up to and observing a crime scene. The government argues that it "anticipates that one or more CWs will testify about the video, including why the CWs were driving with Garrett and how they came to be in that particular area." Without a more specific showing as to how the video and the corresponding testimony of the cooperating witnesses will be relevant the defendants' charged offenses, the court declines to admit this video at this time. Furthermore, as the court previously discussed, many videos appear to be made for

entertainment and promotional purposes (i.e., the videos the
government has categorized as "slideshows set to music" and "rap
music videos"), and their admission appears to pose a
significant risk of unfair prejudice and confusion of the jury,
absent a showing of their probative value.  Furthermore, many of
the videos appear to show footage dating back to the 1990s,
which predates the indictment period, and is less probative than
footage from the indictment period.  To the extent the videos
purport the show the historical evolution of the TF Mafia
enterprise and the relationships of its associates, the
government should provide specifics regarding the context and
the individuals depicted and the bases for admission.

　　　　The court finds that excerpts of videos depicting the
defendants with firearms, cash and drugs are highly probative to
the weapons-related charges, narcotics trafficking charges and
money laundering charges.  The probative value of these video
excerpts outweighs the risk of unfair prejudice under Rule 403
and, therefore, they are admissible.  (*See, e.g.*, Gov't Mots.
Ex. D – "Brooklyn Zoo – Boo" at 1:40.)  The defendants may offer
evidence at trial and appropriate arguments in summation that
the weapons, cash and drugs depicted are "props," but it is up
to the jury to weigh this evidence and decide what is depicted.
(*See* Garrett Opp. at 20.)  The court is unlikely to admit
duplicative videos that the government offers solely for the

purpose of proving the existence of the enterprise, because of
the court's concerns about cumulative evidence and wasting the
jury's time.

        The court offers the following general guidelines for
admission and outlines the procedure to be utilized at trial.
The court requests that the government proffer the excerpts of
the video(s) it intends to introduce (demarcated by the
beginning and ending times, i.e., from [minute]:[second] to
[minute]:[second]); provide the specific bases for the excerpt's
relevance to the charged offenses and its admission; submit a
transcript of the video that also identifies the individuals
depicted; and describe the context depicted, including dates and
locations if possible.  The government should provide the
foregoing by noon on the trial day immediately preceding the day
the government intends to introduce the video excerpt.  If
applicable, for sensitive witnesses, the government may submit
its specific bases for admission on the morning of the day the
government intends to introduce the video excerpt.  The
government shall also make any arguments pursuant to Rule 801 at
that time, including identification of the individuals who are
alleged to be co-conspirators.  To the extent that videos are
admitted that depict the defendants and other individuals
performing rap, defendants may request that the court provide a
limiting instruction to the jury, including but not limited to,

that the evidence is not to be considered for any improper

purpose. *See* Fed. R. Evid. 105.


**SO ORDERED.**


Dated:     April 17, 2015
           Brooklyn, New York


                              _____/s/_____
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York